**Opinion filed February 19, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00013-CR

_____

## MORREECIS E. FRANKLIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR40367**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court convicted Morreecis E. Franklin of endangering a child and assessed his punishment at confinement for two years in the State Jail Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.041(c), (f) (West 2011). However, the trial court suspended the imposition of the sentence and placed Appellant on community supervision for three years. Appellant challenges his conviction in two issues. We affirm.

*Background Facts*

The indictment alleged that Appellant "intentionally, knowingly, recklessly and with criminal negligence" engaged in conduct that placed M.F., a child younger than 15 years of age, "in imminent danger of death, bodily injury, and physical and mental impairment" by holding him over the edge of a third-story balcony. Appellant's downstairs neighbor, Rhonda K. Wilson, testified that she observed Appellant and his girlfriend, Mia Torres, on the balcony of their third-story apartment on the evening of July 5, 2012. Wilson stated that Appellant was holding his infant son, M.F., and that Appellant, Torres, and a man on the ground were arguing very loudly about the child. Wilson testified that, while Appellant clutched the child, "[h]e appeared at times to come over the balcony holding the baby and verbally saying if you want the baby, come and get him." She stated that the baby came over the railing "[a]bout midair over" and that, at one point, Appellant screamed, "If you want the mother-f-----g baby, then come get him." Wilson also testified that it appeared Appellant was thrusting the child over the balcony toward the individual on the ground. Wilson called 911 based upon her concern for the child's welfare.

Appellant called Torres and his friend, Shon Mitchell, as defense witnesses. Mitchell testified that he was visiting with Appellant that evening at Appellant's apartment. He testified that Appellant eventually left with him to travel to Hobbs, New Mexico, for the weekend. Prior to departing with Appellant, Mitchell walked down to his vehicle and remained there for approximately fifteen minutes. Mitchell testified that, as he was returning to Appellant's apartment, Appellant stepped out on the balcony and requested that Mitchell come tell the child good-bye. Mitchell stated that he did not observe Appellant hanging the child over the balcony and that he did not witness any loud arguments involving Appellant.

2

Torres is Appellant's girlfriend and the mother of the child. She testified that she and Appellant had had an argument, but she denied that Appellant ever dangled the child over the railing of the balcony. Torres testified that the argument only occurred inside of their apartment, not on the balcony.

Appellant also testified on his own behalf during the guilt/innocence phase. He denied ever hanging the child over the railing of the balcony. He testified that he and Torres had had an argument, but that it was not about the child. Appellant also denied arguing with anyone on the ground about the child.

*Analysis*

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant cites our opinion in *Garcia v. State*, 348 S.W.3d 930 (Tex. App.—Eastland 2011), *aff'd*, 367 S.W.3d 683 (Tex. Crim. App. 2012), in support of his challenge to the sufficiency of the evidence. *Garcia* involved a mother holding her two-year-old child outside in fifty-eight-degree weather wearing only a diaper. 348 S.W.3d at 930–31. The evidence showed that the child's diaper was soiled and that the child was shivering and had blue lips. *Id.* We determined that the evidence was insufficient to establish child endangerment in *Garcia* because there was no evidence that the child was in imminent danger of bodily injury or physical or mental impairment. *Id.* Appellant contends that the facts in this case are analogous to those in *Garcia* because M.F. "was never harmed, was not injured, and never needed any type of medical attention." We disagree.

Imminent danger is an element of child endangerment. *See* PENAL § 22.041(c). The Court of Criminal Appeals has defined "imminent" as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Garcia*, 367 S.W.3d at 689 (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (internal quotation marks omitted)). The evidence in *Garcia* did not support a determination of imminent danger because there was no evidence that physical pain or impairment was "ready to take place." *Id.* In this regard, there was no evidence that the child was crying at the time or that the child needed medical attention as a result of exposure to the elements. *Id.*

The facts in *Garcia* are clearly distinguishable from this case because the potential harm from a child being exposed to the elements in fifty-eight-degree weather pale in comparison to the dire consequences of a child being dropped from a third-story balcony.

The testimony offered at trial about Appellant's conduct of holding M.F. over the balcony railing was conflicting. As the factfinder, it was within the trial court's province to resolve these conflicts in the evidence. This decision was

4

inherently a matter of determining the witnesses' credibility. Wilson's account supports the trial court's finding that Appellant engaged in conduct that placed M.F. in imminent danger of death, bodily injury, or physical or mental impairment. We disagree with Appellant's contention that the testimony from the defense witnesses constituted "the greater weight (the preponderance) of testimony." In this regard, the defense witnesses consisted of Appellant, his girlfriend, and his friend. On the other hand, Wilson was a disinterested witness that became so alarmed by what she observed that she contacted the police. We overrule Appellant's first issue.

In his second issue, Appellant contends that he did not possess the requisite *mens rea*. Appellant is essentially attacking the sufficiency of the evidence supporting the trial court's determination that he committed the alleged act intentionally, knowingly, recklessly, or with criminal negligence. He asserts that "[t]here is absolutely no testimony concerning evil motive, intentional misconduct, or deliberate actions" on his part because "the child was always cradled in his arms." He additionally relies on the defense of mistake of fact in making this contention. Appellant asserts that, even if he had been close to the balcony railing, he mistakenly believed that M.F. was never in any danger or imminent harm because he was holding the child securely in his arms.

The defense of mistake of fact provides that "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." PENAL § 8.02(a). A belief is reasonable if it is one that would be held by an ordinary and prudent person under the same circumstances as the actor. *Bang v. State*, 815 S.W.2d 838, 841 (Tex. App.—Corpus Christi 1991, no pet.). When the existence of a defense is raised, it must be submitted to the trier of fact. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. [Panel Op.] 1978); *Winkley v. State*,

123 S.W.3d 707, 712 (Tex. App.—Austin 2003, no pet.) (addressing the defense of mistake of fact). If there is a reasonable doubt with respect to a defense, the accused must be acquitted. PENAL § 2.03(d).

The trier of fact is free to accept or reject defensive evidence. *Winkley*, 123 S.W.3d at 712; *Bang*, 815 S.W.2d at 841. The trial court was free to disbelieve the defense witnesses' testimony that Appellant never extended M.F. over the balcony railing or that Appellant held M.F. securely in his arms. Additionally, Wilson testified that it appeared to her that Appellant thrusted M.F. over the balcony railing toward the individual on the ground, and her testimony about Appellant's comments to the effect of "if you want him, then come get him" supports this observation.

Section 22.041(c) provides that a person commits the offense of endangering a child "if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." The language of Section 22.041(c) expresses a clear legislative intent that a person commits the offense of child endangerment if he intentionally, knowingly, recklessly, or with criminal negligence decides to act in a manner that places a child in imminent danger. *See Walker v. State*, 95 S.W.3d 516, 520–21 (Tex. App.—Fort Worth 2002, pet. ref'd). The statute does not require proof that the defendant intentionally, knowingly, recklessly, or with criminal negligence desires to place a child in imminent danger and creates that danger by his conduct. *See id.* Any conduct that places a child in imminent danger is prohibited. *See Millslagle v. State*, 81 S.W.3d 895, 897 n.1 (Tex. App.—Austin 2002, pet. ref'd). Viewing the evidence in the light most favorable to the verdict, there was evidence that Appellant intentionally, knowingly, recklessly, or with criminal negligence

engaged in conduct that placed M.F. in imminent danger by holding him over the railing of a third-story balcony. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


February 19, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.